vor of her husband is the following: "I give and devise to my husband, Francis Harris, the use for and during the term of his natural life of the said farm owned by me." Mrs. Harris died December 15, 1888, leaving her husband surviving her, but no children. At the taking of the inventory, the husband requested the executor to have the appraiser set apart to him the property which would have been set apart to a widow in the case of a man dying leaving a widow. This the executors refused to do. This motion is made to compel the executors and appraisers so to do. By chapter 630 of the Laws of 1887 it is provided, (section 13:) "When a married woman or widow shall die, leaving, her surviving, a husband or a minor child or children, the same articles and personal property shall be set apart by the appraisers for the benefit of such husband or minor child or children as is now provided by law in the case of a man dying and leaving a widow or minor children."

I find no adjudication directly upon this statute, but it would seem that the same rules of law are applicable as have been applied to the provisions in favor of widows. The provision for the husband in this will is not made, in terms, in lieu of any statutory rights he may have, and "it is an established principle that a provision in a will of a husband in favor of the wife will never be construed by implication to be in lieu of dower or any other interest in his estate given by law." *Sheldon* v. *Bliss*, 8 N. Y. 31, 35. So, too, it has been held that this class of property forms no part of the estate as a subject of bequest. The testator could no more divest his widow of it by will than he could her dower in real estate. *Vedder* v. *Saxton*, 46 Barb. 188; *Sheldon* v. *Bliss*, *supra*. By the statutes making provision for widows and minors, the language in each case is, "where a man leaving a family shall die." In such case it is therefore necessary to determine in every case whether there was a family. It has been held that a widow and a female relative living with the deceased at the time of his death constituted a family. By the statute of 1887, however, the words "leaving a family" are not used. It is therefore unnecessary to ascertain whether the husband alone could constitute a family. I am of opinion, therefore, that there is nothing in the will which deprives the husband of the rights given him by the statute of 1887, and that the appraisers should set apart for him the property mentioned in chapter 470 of the Laws of 1874, and by section 2 of chapter 157 of the Laws of 1842.

---

## In re MAPES' ESTATE.

### (*Surrogate's Court, Orange County.* May, 1890.)

CONSTRUCTION OF WILL—CONTINGENT REMAINDER.

  Testator bequeathed to his son the use of $4,000 for life, and directed the principal, after the son's death, to be paid to his children. The will then gave to testator's daughter "all the rest, residue, and remainder of the estate," and "any legacies herein given which may for any cause lapse." *Held*, that the daughter, at the death of testator, took a contingent remainder in the $4,000 legacy, which became absolute on the death of the son without issue, though he survived the daughter, in which case the legacy was payable to her personal representatives.

Proceeding for the accounting of the executors of the will of George H. Mapes, deceased.

*B. R. Champion*, for executor of Sarah J. Mapes. *W. J. Mills*, for executor of John S. Mapes.

COLEMAN, S. The testamentary purpose of the testator is plain. He had only two persons to provide for,—a son and a daughter. First, he made certain provisions for the son, including the gift of the use of the $4,000. Then he gave the rest of the estate to his daughter. Evidently he considered the $4,000 a part of his son's share, for, although he was only given the use of it, the testator provided that it should go at the son's death to the children.

But he also evidently intended whatever of his estate was not received by his son, or his son's children, should be received by his daughter. This intention, I think, appears from the fact that he not only gave her "all the rest, residue, and remainder," but "as well, any legacies herein given which may for any cause lapse." The testator certainly did not intend to die intestate as to any part of his estate, and this should have its proper influence in determining the construction of the will. It has happened that the testator's son, John, has died without leaving children surviving him to take the principal of the $4,000 given them. No mention is made in the will what shall become of the $4,000 in this event, unless we can find it in the latter clause, where all the rest, etc., is given the daughter; and I think it is proper to so conclude, for the testator there says, "as well, any legacies herein given which may for any cause lapse," and this is the only case where a lapse could have happened, except only one other,—the death of the son before the testator,— which it is not probable he contemplated. This being so, it results that the daughter or her representatives are entitled to the $4,000, unless we find in the will that the testator intended that his daughter should only take if she herself survived her brother. If this was his intention, then this legacy does not pass under her will, but goes to the next of kin of the testator by statute, he having failed by his will to provide what should be done with it on the happening of this event.

I have said that the daughter or her representatives take unless we find in the will that the daughter must survive her brother; that is, the will may say so in so many words, or the will may say so by force of the construction given by the courts to the words used, they not being sufficiently plain of themselves. If, however, the will itself shows a clear intention that the legatee shall take absolutely on the happening of the contingency, whether he survive the contingency or not, there is no principle of law which will prevent the taking. In those cases where the courts have held that the legatee must survive the contingency upon which the legacy depended, the decisions rest upon a rule of construction, and not upon a statute or principle of law. It may be said that it is more natural to suppose that the testator would prefer to have his collaterals receive it under the statute, his descendants having failed to live to receive it, rather than have it go to strangers under his daughter's will. It is, however, evident that he did not concern himself in his will about what should ultimately become of any of the property given by him to her, for no mention is made by him what direction any of it is to take at her death. His gifts to her were clearly intended to be absolute, and uncoupled with any condition, except the single one, regarding the $4,000, that her brother die without leaving children him surviving. I therefore conclude that Sarah Jane Mapes, at the death of the testator, took a contingent remainder in the $4,000 legacy, which then vested in her as a right, according to its character, and became absolute at the death of John S. Mapes. The decree should direct that the executors of George Mapes, deceased, pay over the fund to the executors of Sarah J. Mapes, deceased.

---

### In re BAITY'S ESTATE.

#### (Surrogate's Court, Westchester County.   January, 1891.)

ADMINISTRATORS—ACCOUNTING—APPLICATION TO SET ASIDE.

In a proceeding by the wife and guardian of a lunatic to set aside an accounting of administrators with the will annexed, it appeared that, prior to the appointment of such administrators, the interest of the ward, who was a devisee of the will, was sold on executions against him, and purchased by one of the administrators; that such devisee afterwards became insane; that these facts were set forth in the petition for accounting, and recited in the decree; and that the lunatic was represented in the accounting by a special guardian. *Held*, that the application on the ground that there was no proof produced showing the judicial sale, and that